**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**EDUARDO COHEN WATKINS,**

                    **Plaintiff,**          24-mc-23 (JGK)

          **- against -**                   <u>**MEMORANDUM OPINION**</u>
                                            <u>**AND ORDER**</u>
**ELLESSE LLC, ET AL.,**
                    **Defendants.**
_____

**JOHN G. KOELTL, District Judge:**

     The petitioner, Eduardo Cohen Watkins ("Watkins"), filed an ex parte Application and Petition (the "Application") pursuant to 28 U.S.C. § 1782, seeking an order authorizing the petitioner to serve subpoenas on the respondents, Ellesse LLC ("Ellesse") and Stephen Lamb ("Lamb"), to obtain discovery for use in two pending Swiss lawsuits (the "Swiss Actions"). On July 26, 2024, Magistrate Judge Tarnofsky issued a Report and Recommendation ("R&R") recommending that the Court grant the Application with some modifications. See In re Watkins, No. 24-mc-23, 2024 WL 4264900 (S.D.N.Y. July 26, 2024). The respondents filed objections to Magistrate Judge Tarnofsky's R&R. See ECF No. 40. For the following reasons, the objections to the R&R are **overruled.**

                              **I.**

     Lily Safra ("Safra") passed away in 2022. Wilson Opening Decl. ¶ 12, ECF No. 8. The petitioner is her son. Id. ¶ 9. During Safra's lifetime, she signed several wills, including

wills executed in 1983, 1995, 2009, and 2013. Wilson Reply Decl. ¶ 8-13, ECF No. 23. The parties dispute the validity of certain of these wills. Id. ¶ 15.

The petitioner contends that the 2013 will is "plagued with issues." Mem. in Opp. to Objection to R&R ("Opp. Mem.") at 5, ECF No. 42.[1] First, the petitioner alleges that one of the witnesses, Max Coslov ("Coslov"), was incompetent to witness the will because he sits on the board of the Lily Safra Foundation (the "Foundation")—a major beneficiary of the will. Id. The petitioner further alleges that Safra's choice of Brazilian law is invalid because she renounced her Brazilian citizenship, that Coslov and his colleague Ezra Marcos ("Marcos") pressured Safra to alter her will, and that Safra's bequests to Coslov and the Foundation were premised on the mistaken belief that Coslov and Marcos would manage the Foundation "soundly and consistent with their fiduciary duties." Id. The petitioner raises similar concerns regarding the 2009 will. Id.

Under both Brazilian and Swiss estate law, a "forced share" is reserved for certain heirs although the countries differ as to how much of the estate will be reserved. Bohnet Decl. ¶ 35, ECF No. 23-1. Under Swiss law an heir whose forced share has

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

been infringed is entitled to a reduction action to reduce the decedents' other bequests and to restore the forced share. Id. ¶ 36. Prior to bringing either a reduction action or a nullity action to have a will declared void, a claimant must participate in a conciliation proceeding before a judge. Id. ¶ 43.

In this case, the petitioner commenced a conciliation proceeding in anticipation of bringing an action in the Court of First Instance of the Canton of Geneva to (1) declare the 2013 will void, or alternatively, find certain of its bequests and its choice of Brazilian inheritance law void and (2) to decide a reduction claim (collectively, the "Nullity Action"). Id. ¶ 50. Meanwhile, Safra's allegedly adopted son, Carlos Monteverde ("Monteverde"), also commenced a conciliation proceeding, seeking a declaration that he is one of Safra's heirs, and that he is entitled to a forced share that has been infringed (the "Reduction Action"). Id. ¶¶ 48-49. Both conciliations failed and Watkins and Monteverde were authorized to proceed with the Swiss Actions. Id. ¶ 47. The actions ultimately ask the Swiss Court to decide whether Watkins and/or Monteverde's claimed forced shares have been infringed, and if so, by how much.

The petitioner brought this action against Respondents Lamb and Ellesse, alleging that they possess documents relevant to the Swiss Actions. Mem. of L. in Supp. of Mot. for Discovery ("Mot. for Discovery"), ECF 6. Lamb managed Ellesse—a Delaware-

3

registered private foundation and trust—and handled Safra's New
York affairs. Wilson Opening Decl. ¶¶ 10-11. Specifically, the
petitioner sought (1) all documents and communications related
to Safra's estate; (2) all documents and communications related
to any assets that were at any time part of Safra's estate,
including the location and value of such assets; (3) all
documents and communications related to any Safra trusts; and
(4) all documents and communications related to any assets that
were at any time part of any trusts, including the location and
value of such assets. See Alston Decl., Ex. B. at 11-12, ECF.
No. 7.

The Magistrate Judge issued a thorough R&R that recommended
narrowing and modifying the Application and granting the § 1782
request with respect to (1) testamentary documents; (2)
documents relating to Safra's relationship with Monteverde,
Coslov and Marcos, and any relatives identified by the
petitioner; (3) documents relating to Safra's citizenship and
residency; (4) documents sufficient to identify Safra's assets
at some discrete points in time, including the location and
value of any such assets if known to the respondents;
(5)communications with Coslov or Marcos, the family office, or
the Lily Safra or Lily Safra Hope Foundations about the estate,
trusts, or foundations; (6) documents relating to transactions
that Coslov or Marcos caused the family office trusts, or

4

foundations to make; (7) communications with Stephen Gardner or
Richard Rothberg or any other trustees whose names are provided
by the petitioner; and (8) documents relating to the
establishment or dissolution of trusts or distributions
therefrom. See In re Watkins, 2024 WL 4264900, at *11-12.[2] The
R&R also conditioned its grant of the petitioner's application
on the issuance of a protective order limiting the use of the §
1782 discovery to the Swiss Actions. Id. at *12.

**II.**

"Although a magistrate may hear dispositive pretrial
motions, [the magistrate] may only submit proposed findings of
fact and recommendations for disposition of the matter." Thomas
E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.
1990). A district judge reviews de novo a Magistrate Judge's R&R
and must "arrive at its own, independent conclusion about those
portions of the magistrate's report to which objection is made."
Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985). By
contrast, for "nondispositive pretrial matters, . . . the

---

[2] Following an Order by the Magistrate Judge directing the
respondents to identify the burden the respondents would face if
the Court were to modify the petitioner's requests for "all
documents" to a request for "documents sufficient to show," see
ECF No. 28, the petitioner updated its initial request list with
a list of eight specific requests, ECF No. 33. The R&R
incorporates most of these updated requests.

magistrate may issue orders." In re Hulley Enters. Ltd., 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019).

Previously, "the consensus view in this District was that 'rulings on § 1782 applications are not dispositive'" and could be disposed of by order of a magistrate judge. See In re Libyan Asset Recovery and Mgmt. Off., No. 21-mc-852, 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16, 2023) (quoting In re Hulley, 400 F. Supp. 3d at 71). However, in a recent unreported order, the Second Circuit Court of Appeals determined it lacked jurisdiction to review an order by a magistrate judge denying a § 1782 Application and remanded for the order to be "treated as a report and recommendation." Associacao dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp., No. 22-2865, 2023 WL 3166357, at *1 (2d Cir. Mar. 28, 2023).

In this case, the Magistrate Judge issued an R&R, taking the view that a decision granting a § 1782 application may be dispositive. See In re Watkins, 2024 WL 4264900, at *1 n.1. Accordingly, this Court has reviewed the R&R de novo.

**III.**

28 U.S.C. § 1782 permits a district court "upon the application of any interested person," to order a person within its jurisdiction "to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Section 1782 is discretionary: it "authorizes,

6

but does not require," district courts to provide assistance to discovery applicants in foreign proceedings. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004). Section 1782 also provides district courts with discretion to tailor discovery "to avoid attendant problems." Application of Esses, 101 F.3d 873, 876 (2d Cir. 1996).

To obtain discovery pursuant to § 1782, the applicant must satisfy the following statutory requirements:

> (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made[;] (2) that the discovery be for use in a proceeding before a foreign tribunal[;] and (3) that the application be made by a foreign or international tribunal or "any interested person."

Id. at 875. Provided the applicant satisfies the statutory requirements, a district court may grant discovery but must exercise its discretion "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004).

The Supreme Court has identified four discretionary factors for district courts to consider in determining whether to grant § 1782 applications. See Intel, 542 U.S. at 264-65. The Intel

factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"—in which case, the need for § 1782 is not as readily apparent; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Id.

## IV.

In this case, the petitioner has satisfied the statutory requirements of § 1782. As the respondents concede, the petitioner met the first and third statutory factors. Ellesse has its principal place of business in New York and Lamb resides in this District, and therefore, "the person[s] from whom discovery is sought reside . . . in the district of the district court to which the application is made." See Application of Esses, 101 F.3d at 875. Moreover, the petitioner brought the Nullity Action and therefore easily satisfies the "interested party" requirement.

The respondents contest only the second statutory requirement: that the discovery be "for use" before a foreign tribunal. The respondents contend that: (1) the requested

information about the estate and its assets is not "for use" in the Swiss Actions "because [the] [p]etitioner must first obtain favorable decisions on issues in both of the Swiss Actions before the requested evidence becomes relevant"; and (2) the other requested documents either were not requested in the petitioner's initial Application or are irrelevant to the Swiss Actions. Mem. in Supp. of Objection to R&R ("Objection") at 8-9, ECF No. 40.

"The 'for use' statutory prerequisite assesses 'the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." In re BonSens.org, 95 F.4th 75, 80 (2d Cir. 2024) (quoting In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017)).[3] In short, the requested discovery must "be employed with some advantage or serve some use in the proceeding." In re Accent, 869 F.3d at 132. Implicit in the "for use" requirement is a threshold requirement that the foreign proceeding be "adjudicative in nature." See Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27 (2d Cir. 1998). If the foreign proceeding is adjudicative in nature, as the Swiss Actions are, then "[a]pplicants need only make a de minimis showing that the

---

[3] However, the evidence does not need to be admissible in the foreign proceeding. Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82 (2d Cir. 2012).

requested discovery is 'for use' in the proceeding." <u>In re Children's Inv. Fund Foundation (UK)</u>, 363 F. Supp. 3d 361, 371 (S.D.N.Y. 2019); <u>see also</u> <u>In re Veiga</u>, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (collecting cases for the proposition that "the burden imposed upon an applicant is de minimis.").

However, a § 1782 applicant may not have the "practical ability" to place discovery before a foreign tribunal where the applicant is not a participant in the foreign proceeding and has no means of ensuring the foreign tribunal considers the requested discovery. <u>See</u> <u>IJK Palm LLC v. Anholt Servs. USA, Inc.</u>, 33 F.4th 669, 680 (2d Cir. 2022) (finding that there must be a "procedural mechanism by which [the applicant] may inject the discovery it seeks into foreign proceedings"); <u>Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.</u> ("<u>KPMG</u>"), 798 F.3d 113, 118 (2d Cir. 2015) (finding "considerable overlap between" the "interested person" and "for use" requirements on the grounds that both involve "the applicant's ability to use the evidence it sought in the U.S. courts before the foreign administrative tribunal"). While a foreign proceeding need not be pending, or even imminent, to satisfy this requirement, it must be "within reasonable contemplation." <u>Mangouras v. Squire Patton Boggs</u>, 980 F.3d 88, 100 (2d Cir. 2020) (quoting <u>Intel</u>, 542 U.S. at 259).

Similarly, an applicant may not have the "practical
ability" to place evidence before a foreign tribunal where the
requested information would be irrelevant and of no use in the
foreign proceeding. See KPMG, 798 F.3d at 120 n.7 ("[I]t is
difficult to conceive how information that is plainly irrelevant
to the foreign proceeding could be said to be 'for use' in that
proceeding."). However, the applicant's burden to demonstrate
relevance is slight. See BonSens, 95 F.4th at 80 (applicant must
demonstrate the evidence sought is at least "minimally relevant
to the foreign proceeding"); Mees v. Buiter, 793 F.3d 291, 298
("[D]iscovery sought pursuant to § 1782 need not be necessary
for the party to prevail in the foreign proceeding in order to
satisfy the statute's 'for use' requirement.").

**A.**

Magistrate Judge Tarnofsky correctly found that the
requested documents relating to the value of the estate's assets
are "for use" in the Swiss Actions. The petitioner—a party to
the pending Swiss Actions—has the "practical ability" to place
the evidence relating to the value of the estate before the
Swiss Court.

The respondents rely on IJK Palm to contend that discovery
regarding the estate's assets is not "for use" in the Swiss
Actions because the Swiss court may not reach the question of
the estate's value. Objection at 9. That case held that the "for

11

use" requirement was not satisfied, where the applicant would
have needed to "clear a series of procedural hurdles under
[foreign] law before it [could] present any evidence to [the
foreign] court."[4] IJK Palm, 33 F.4th at 680. The respondents
argue that the presence of threshold questions about the 2013
will's validity and Monteverde's status as an heir present
similar procedural hurdles in this case. However, in IJK Palm,
no proceeding was "within reasonable contemplation," because
procedural hurdles prevented the applicant from initiating a
proceeding in which to introduce the evidence. Meanwhile, in
this case, the petitioner is a party to a pending proceeding in
which it can introduce the requested § 1782 discovery.

    The respondents also cite BonSens. In that case, two French
courts dismissed the § 1782 applicant's suit for lack of
jurisdiction. 95 F.4th at 78-79. The applicant appealed the
jurisdictional issue to the Conseil d'Etat—the highest

_____

[4] In IJK Palm, the petitioner had no authority under Cayman
Islands law to file suit because the company had entered
liquidation proceedings and Cayman law only permitted the
liquidators to sue on the company's behalf. 33 F.4th at 677. The
petitioner contended that it could use the discovery materials
to persuade the liquidators to sue on behalf of the company. Id.
Alternatively, the petitioner contended that it could bring its
own suit if the liquidators refused, but this option required
leave of the Cayman court and the petitioner could not point to
a similar double-derivative case where the court had granted
leave. Id. at 677. 679-80. The Second Circuit Court of Appeals
reasoned that these hypothetical proceedings were too
speculative.

administrative court in France—and sought to introduce discovery obtained through § 1782, as permitted by the Conseil d'Etat's procedural rules. See id. at 78-79, 81. However, the requested discovery did not pertain to the jurisdictional issue on appeal to the Conseil d'Etat, and the Second Circuit Court of Appeals determined that "at this stage of the proceeding, there is no objective basis from which [to] conclude that the Conseil d'Etat's decision on the jurisdictional issue will be favorable to BonSens." Id. at 81. The Second Circuit Court of Appeals held that if the applicant's ability to "initiate a proceeding in which the requested discovery may be used 'depends on some intervening event or decision,' the applicant must 'provide an objective basis on which to conclude that the event will occur or the requisite decision will be favorable.'" Id. at 80-81 (quoting IJK Palm, 33 F.4th at 680).

By contrast, in this case, the petitioner's position on the threshold questions has not been rejected by multiple lower courts. Moreover, the petitioner's Swiss law expert contends that the Swiss court will reach the petitioner's reduction claim regardless of its determination of the 2013 will's validity or Monteverde's status. Bohnet Decl. ¶¶ 51-52 ("In both the Reduction Action and the Nullity Action, whether or not the Swiss court decides that Swiss inheritance law applies or the

2013 will is invalid, it will need to establish the value of the estate . . . .").

The threshold questions merely dictate whether the petitioner's reduction will be premised on the 2013 will and whether Monteverde will also be included in the forced share calculations. They do not prevent the Swiss court from reaching the question of the estate's valuation—which is included in the petitioner's prayer for relief. See Jendin Decl. ¶ 8, ECF No. 27. While the respondents' Swiss law expert asserts that "it is highly likely that the Swiss Court will simplify the proceedings, by limiting them to the issues of the invalidity of the will and the choice of law," see id. ¶ 15, this possibility does not amount to the sort of procedural hurdle faced by the applicants in BonSens and IJK Palm. Moreover, even if the Swiss court chooses to divide the proceedings, the Second Circuit Court of Appeals has concluded that the "for use" requirement is met provided "there are circumstances under which" the foreign tribunal "could hear" the evidence "regardless of how narrow those circumstances might be." Brandi-Dohrn, 673 F.3d at 83.

**B.**

Magistrate Judge Tarnofsky also correctly determined that discovery of testamentary documents, citizenship and residency documents, and documents related to Monteverde and Coslov and

14

Marcos are relevant to the threshold issues in this case and are "for use" in the Swiss Actions.

The respondents object that the petitioner's Application sought only documents about the "Safra Estate"—and first referenced testamentary documents and documents about Safra's citizenship in their reply brief. Objection at 9. They contend that because the Application is silent as to these specific documents, "there is no basis to conclude that [the] [p]etitioner will actually raise any argument in the Swiss Action as to which those documents would be relevant." Id.

Magistrate Judge Tarnofsky's R&R correctly notes that the general rule that arguments cannot be raised for the first time on reply is inapplicable where those arguments are raised in response to an argument first made in the opposing party's response papers. See Bravia Cap. Partners, Inc. v. Fike, 296 F.R.D. 136, 144 (S.D.N.Y. 2013). In this case the petitioner specified his interest in testamentary documents, documents related to citizenship and residency, and documents related to Monteverde, Coslov, and Marcos in response to the respondents' contention that the subpoenas sought information irrelevant to the Swiss Action. Further, as Magistrate Judge Tarnovsky noted, the respondents had the opportunity to file a sur-reply.

Moreover, the requested documents are plainly relevant to the Swiss Actions. Production of documents related to the

relationship between Safra and Monteverde is relevant to
Monteverde's status as an heir—an issue which the Swiss Court
will need to decide. Bohnet Decl. ¶ 49. Documents related to
Safra's citizenship and residency are relevant to Safra's
ability to elect Brazilian law—an issue that is also before the
Swiss Court. Testamentary documents are relevant to the Swiss
court's determination of which of the wills governs the
distribution of the estate. Finally, documents relating to
Coslov and Marcos are relevant to the petitioner's argument that
the 2013 will is invalid because Coslov was not a competent
witness, because Coslov and Marcos exerted undue influence on
Safra, and because Safra's bequests to Coslov and the Foundation
were premised on the mistaken belief that he managed her assets
consistent with his fiduciary duties. The possibility that the
petitioner may not raise each of the arguments in the Swiss
Actions does not mean the relevant documents are not "for use"
before the Swiss Court. Documents relating to potential
arguments suffice to satisfy the de minimis "for use"
requirement. See Lancaster Factoring Co. Ltd. v. Mangone, 90
F.3d 38, 42 (2d Cir. 1996).

**V.**

Finally, Magistrate Judge Tarnofsky correctly concluded
that the discretionary Intel factors all favor the petitioner.

**A.**

16

The first Intel factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding." Intel, 542 U.S. at 244. If so, "aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Id.

The respondents contend that the petitioner can obtain the requested evidence from parties to the Swiss proceedings and that this factor favors them even though Ellesse and Lamb are not participants in the foreign proceedings. Objection at 12-14. However, the petitioner specifically seeks documents held by the respondents in New York. The fact that certain documents in Switzerland may also relate to the estate's assets or Safra's citizenship or other requested information does not mean that the Swiss court can compel the production of the New York documents.

Moreover, to the extent overlap exists between documents within the jurisdictional reach of the Swiss court and documents sought in the § 1782 proceeding, that overlap does not mean the petitioner has failed to satisfy the first Intel factor. See In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia, No. 23-mc-208, 2024 Wl 555780, at *10 (S.D.N.Y. Jan. 18, 2024), report and recommendation adopted, 2024 WL 554302 (S.D.N.Y. Jan. 18, 2024) ("[E]ven if the Subpoenas embrace a smattering of communications in [the defendant's]

17

possession that were not previously produced by [the defendant], that is no reason to condemn [the petitioner's] entire request as improper."); In re Porsche Automobil Holding SE, No. 15-mc-417, 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (concluding that the first Intel factor favored the petitioner where discovery was potentially duplicative but there was "no indication that the disclosures [permitted under German law] would be sufficiently broad to give [the petitioner] all that it seeks in this Section 1782 proceeding").

Further, as Magistrate Judge Tarnofsky noted, the respondents' position would impose an exhaustion requirement on § 1782 petitioners, forcing them to exhaust the mechanisms for obtaining discovery in the foreign jurisdiction before permitting them to bring a § 1782 action. The Court of Appeals for the Second Circuit has rejected this position, concluding that a "quasi-exhaustion requirement" "finds no support in the plain language of the statute and runs counter to its express purposes." Mees, 793 F.3d at 303 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997)).

**B.**

The second Intel factor permits courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government . . . to U.S. federal-court judicial assistance."

18

Intel, 542 U.S. at 264. The "[r]espondants do not dispute that Swiss courts are generally receptive to § 1782 discovery." Objection at 14. This concession should end the analysis. The respondents' attempt to import the relevance inquiry from the "for use" statutory factor into the analysis of the secondary Intel factor is unpersuasive.

### c.

The third Intel factor "consider[s] whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65. "Proof-gathering restrictions" are "rules akin to privilege that prohibit the acquisition or use of certain materials," not "rules that fail to facilitate the investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." Mees, 793 F.3d at 303 n.20; see also In re Accent Delight, 16-mc-125, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (concluding that rules regarding timing of discovery and breadth of requests were "limits on the scope of discovery in those fora, not proof-gathering restrictions"). In this case, the respondents have not demonstrated that any of the requested evidence is barred by a "proof-gathering restriction" rather than a mere limit on the scope of discovery.

The respondents contend that the Swiss Procedural Code permits the taking of evidence only when an issue is before the Swiss Court and that "the composition of Ms. Safra's estate is not currently before (and may never be before) the Swiss Court." Objection at 15. However, as explained above in reference to the respondents' argument on the "for use" factor, the petitioner's reduction claim will likely be decided by the Swiss Court and the requested information is relevant to that reduction claim. See Bohnet Decl. at 51-52. Moreover, the petitioner contends that he must present evidence regarding all his claims—including his reduction claim—in the complaint. Id. ¶ 22. The issue is therefore properly before the Swiss Court such that granting the petitioner's § 1782 motion would not circumvent Swiss proof-gathering mechanisms.

## D.

The fourth Intel factor considers whether a request is unduly burdensome and intrusive. This factor is evaluated under the same standard as Federal Rule of Civil Procedure 26. Mees, 793 F.3d at 302. That standard limits discovery to matters relevant and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

In this case, the respondents have failed to set forth an estimate of the volume of documents requested, the location of the documents, or the form of the documents. They also have not

20

supplied an estimate of the time required to comply with the request. It is therefore impossible to conclude that the requests are overly burdensome. Moreover, the subpoenas recommended by Magistrate Judge Tarnofsky pertain directly to either the threshold questions or the reduction action and are "proportional to the needs of the case." See Fed. R. Civ. P. 26(b)(1).

In summary, the R&R correctly found that each Intel factor favored the petitioners.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the reasons explained above, the respondents' objections to the R&R are **overruled** and the petitioner is authorized to serve the request for discovery as authorized in the R&R. The Clerk is directed to close this case.

**SO ORDERED.**
**Dated:    New York, New York**
**October 25, 2024**

John G. Koeltl
United States District Judge